**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEAH BINDIG | ) | |
| | ) | |
| Plaintiff, | ) | No 1:21-cv-2911 |
| v. | ) | |
| | ) | |
| JOSE GUILLEN and | ) | |
| STATE OF ILLINOIS (DEPARTMENT OF | ) | JURY DEMANDED |
| AGRICULTURE) | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

Plaintiff, Leah Bindig ("Plaintiff") by and through her attorneys, Lynch Thompson LLP, and for her Complaint at Law against Defendants, Jose Guillen ("Guillen") and the State of Illinois (Illinois Department of Agriculture or "IDA"), states as follows:

## PARTIES

1. Plaintiff Ms. Leah Bindig is an individual residing in Cook County, Illinois.

2. Plaintiff is the owner of a dog grooming, boarding, and daycare business.

3. Upon information and belief, Defendant Jose Guillen is an individual residing in Melrose Park, Cook County, Illinois.

4. Guillen is an employee of Defendant IDA. Guillen has been in the employ of the IDA for at least thirteen years.

5. The IDA is a department of the Illinois state government, created by statute 20 ILCS 5/5-15. The department regulates and administers various facets of the agriculture industries of Illinois, including but not limited to administering regulations concerning animal care and control, and controlling "licensure and inspection" of "kennel operators, . . . animal shelters, [and] day care operators."

1

6. The IDA's administrative office is headquartered in Springfield, Illinois. Upon information and belief, the department has an office in Cook County.

## JURISDICTION AND VENUE

7. This action is brought pursuant to 42 U.S.C. Section 1983 to address the deprivation under color of state law of Plaintiff's rights as secured by the United States Constitution.

8. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

9. At all relevant times, Plaintiff Leah Bindig has resided in Cook County, Illinois.

10. At all relevant times, Defendant Jose Guillen has been a resident of Cook County, Illinois, and an employee of the IDA.

11. A substantial part of the events or omissions giving rise to the claim occurred within the Northern District of Illinois.

12. Accordingly, venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

13. Plaintiff Ms. Leah Bindig owns a dog grooming, boarding, and daycare business. At one location the company handles dog overnight boarding.

14. Plaintiff's pet care business must comply with certain requirements imposed by state laws and regulations such as the Illinois Animal Welfare Act and Animal Welfare Rules. Pursuant to the Acts, failure to pass inspections by the IDA may result in fines, refusal, suspension or revocation of a license. And "no person shall engage in business as a pet shop operator … in this State without a license therefor issued by [the IDA.]"

15. The IDA has the statutory authority to license and inspect pet shop operators, dog dealers, daycare/kennel operators.

16. The IDA tasks its inspectors with performing inspections and provides the inspectors with authority to evaluate the situation and propose penalties.

17. Defendant Jose Guillen has been an inspector employed by the IDA since at least 2007.

18. On behalf of the IDA, Guillen conducts periodic inspections of the company's overnight boarding location since 2018. Guillen has the authority to decide whether the company passes or fails the inspections, raise other non-compliance issues, impose fines or penalties, and revoke/refuse to issue necessary licenses.

19. Guillen is the only on-site inspector for the territory in which Plaintiffs' company operates, a fact he continued to emphasize at all relevant times.

20. Guillen is fully aware of his power over Plaintiff's small pet business. On more than one occasion, Guillen suggested to Plaintiff that he had the authority to affect the outcome of the inspections, including the power to shut down her business. Guillen emphasized his ten years' experience with the IDA holding the power of license revocation.

21. While serving as the inspector for the IDA, Mr. Guillen engaged in abusive and harassing conduct towards Plaintiff. Mr. Guillen also verbally harassed Ms. Bindig on a continuing and ongoing basis.

22. In or around May 2018, Jose Guillen came to conduct an inspection of Ms. Bindig's company's overnight boarding location for the first time. Jose Guillen introduced himself as the inspector working for the IDA. As the store owner, Plaintiff accompanied Jose Guillen during the inspection and tried to address any questions Inspector Guillen may have.

23. During this process, however, Inspector Guillen made numerous comments about Plaintiff's figure, and expressed that he found Plaintiff attractive. He inquired about Plaintiff's

romantic status. After learning that Plaintiff was a single woman running the pet care store, Inspector Guillen suggested that Plaintiff will "need help."

24. Even though all the items on the inspection checklist have been completed, Inspector Guillen withheld signing off the inspection form. Instead, he lingered in Plaintiff's presence, and repeatedly invaded Plaintiff's personal space by using his hands to touch Plaintiff's hand, shoulders and arms. He requested a hug from Plaintiff. Plaintiff rejected that request, but Inspector Guillen refused to take "no" for an answer. He eventually forced an uncomfortable and inappropriate hug upon Plaintiff.

25. Inspector Guillen did not sign off the inspection form or leave until the "hug" he initiated without permission had been completed.

26. In May 2019, Jose Guillen performed another inspection. During the visit, Guillen once again verbally and physically harassed Plaintiff. He again suggested that he found Plaintiff very attractive. At one point, Inspector touched Plaintiff's hand, held it without her consent, and said words to the effect of: "You are so busy. How do you have time to stay in shape. You have such a great figure" and also "I bet you look great in bikini. Do you have any pictures on your phone of you in a bikini?" Guillen enquired about whether Plaintiff had a boyfriend and suggested that Plaintiff should go out with him.

27. While Guillen was carrying out these unwanted and unwelcomed acts on Plaintiff, Guillen continued to request information needed for the inspection.

28. As in 2018, after Inspector Guillen concluded the inspection, he lingered in Plaintiff's presence. While the facility had passed inspection, Inspector Guillen purposefully showed Plaintiff the inspection sheet, which required his signature to "pass" but was still unsigned.

29. Clearly, it required more to pass Inspector Guillen's inspection. Indeed, it appeared to Plaintiff as if the inspection sheet was a hostage so Guillan could push for things not on the

inspection list. Inspector Guillen again asked Plaintiff for hugs. After Plaintiff expressly told him "no," Guillen proceeded to pull Plaintiff in for a hug and pressed her breast. He rubbed Plaintiff's shoulders, arms, buttocks and other parts of her body, and continued his verbal harassment.

30. In fright and shame, Plaintiff was virtually frozen during the incident. She was in disbelief that this took place again at her workplace, by the same state employee who had the authority to fail inspections and end the small business she worked so hard to build.

31. Plaintiff was conflicted, confused, and scared. She could not risk failing the ongoing inspection, or inspections in the future. As Inspector Guillen repeatedly emphasized that he had been with the state for ten years and he is the only inspector for her business.

32. Again, Guillen did not issue a "pass" until after he had completed the "hug."

33. Thereafter, Guillen continued to make inappropriate and harassing comments about Plaintiff while discussing ongoing inspection issues in his capacity as a state employee.

34. In February, 2021, Inspector Guillen called Plaintiff's business and spoke with an employee raising multiple issues that could affect licensure (and possible penalties) and claiming that his call was considered a 30-day notice and the countdown started that day on February 16, 2021. Once Plaintiff received that urgent report, Plaintiff was forced to call Inspector Guillen.

35. During a call, Inspector Guillen discussed the issues with Plaintiff. Inspector Guillen told Plaintiff that once the Department of Agriculture receives the renewal application for the operator license, it triggers an inspection. The inspection date is set by someone else in the department, but he "could change the date" to a date Plaintiff will be available, because he "really wanted [Plaintiff] to be there for the inspection," and "really wanted to see [Plaintiff] and find out how [Plaintiff is] doing."

5

36. During and after the phone call, Inspector Guillen continued to verbally harass Plaintiff insisting that Plaintiff must be personally available for the inspection it would be best if he could see her, and again inquiring about Plaintiff's relationship status.

37. As a result of the conduct described above, Plaintiff has suffered severe psychic and mental injuries. Plaintiff has sought counseling for that trauma.

38. Plaintiff lives in a constant state of fear for her safety and the fate of her small business.

39. Plaintiff has experienced depression, anxiety, worry, and stress. Plaintiff's symptoms include loss of weight and sleep, nightmares involving Guillen, and a profound loss of self-esteem.

40. Plaintiff feels conflicted, terrified, and disgusted when Guillen continues to harass her while carrying out his duties as an inspector.

## COUNT I – Violation of 42 U.S.C. §1983
### (Against Defendant Jose Guillen)

41. As and for its Paragraph 41, Plaintiff adopts and re-alleges paragraphs 1 through 40 as if fully restated herein.

42. Plaintiff is a female and is a member of a protected class.

43. Plaintiff was similarly situated to individuals who are not of the protected class such as male pet shop owners.

44. Inspector Guillen treated Plaintiff differently than other similarly situated male pet shop owners without a legitimate governmental purpose of doing so.

45. Inspector Guillen's actions with respect to Plaintiff were motivated by a discriminatory purpose, in violation of Plaintiff's constitutional rights to equal protection under federal law.

46. Plaintiff was deprived of a constitutional right, and Inspector Guillen was personally involved in the constitutional violations of Plaintiff.

47. Inspector Guillen acted under color of state law.

48. Inspector Guillen acted in an official capacity as a public employee for the IDA.

49. Inspector Guillen exercised responsibilities pursuant to Illinois state law, such as the Illinois Animal Welfare Act and Animal Welfare Rules.

50. Inspector Guillen's conduct described above is related to his state-conferred authority.

51. Acts committed by Inspector Guillen related to the performance of inspector duties.

52. Inspector Guillen misused the power possessed by virtue of state law.

53. Inspector Guillen's conduct was made possible only because he is clothed with the authority of state law.

54. As a direct and proximate result of the equal protection violation, Plaintiff suffered damages.

WHEREFORE, Plaintiff respectfully requests entry of a judgment in her favor and against Jose Guillen in an amount to be proven at trial including actual damages, damages for emotional distress, punitive damages, plus attorney's fees and costs, and further relief as this Court deems equitable and just.

### COUNT II – Battery
### (Against Defendant Jose Guillen)

55. As and for its Paragraph 55, Plaintiff adopts and re-alleges paragraphs 1 through 54 as if fully restated herein.

56. Inspector Guillen's conduct described in the foregoing paragraphs, was done intentionally and knowingly, without legal justification.

57. Inspector Guillen's conduct was unpermitted, unauthorized, and without Plaintiff's consent.

58. Inspector Guillen's conduct involves making physical contact with Plaintiff.

59. Inspector Guillen willfully touched Plaintiff without her consent.

60. As a direct and proximate result of Inspector Guillen's conduct, Plaintiff suffered damages.

61. Plaintiff was discouraged from reporting her claim or bringing this action sooner because of her fear that she would face retaliation as a result of reporting.

WHEREFORE, Plaintiff respectfully requests entry of a judgment in her favor and against Jose Guillen in an amount to be proven at trial including actual damages, damages for emotional distress, punitive damages, plus attorney's fees and costs, and further relief as this Court deems equitable and just.

### COUNT III – Illinois Gender Violence Act 749 ILCS 82/5
### (Against Defendant Jose Guillen)

62. As and for its Paragraph 62, Plaintiff adopts and re-alleges paragraphs 1 through 61 as if fully restated herein.

63. Defendant Jose Guillen's conduct, as described in the foregoing paragraphs, was insulting and offensive.

64. Inspector Guillen's conduct was done intentionally and knowingly, without legal justification.

65. Inspector Guillen's conduct was unpermitted, unauthorized, and without Plaintiff's consent.

66. Inspector Guillen's conduct makes physical contact of an insulting or provoking nature with Plaintiff.

67. Inspector Guillen willfully touched Plaintiff without her consent.

68. Inspector Guillen's conduct satisfies the elements of battery under the laws of Illinois.

69. Inspector Guillen's conduct was committed on the basis of Plaintiff's sex.

70. Inspector Guillen's conduct was of a sexual nature.

71. Inspector Guillen's conduct was committed under coercive conditions in that Guillen was an IDA employee who was in a position of power over Plaintiff and took advantage of his authority over Plaintiff.

72. Inspector Guillen's conduct included threats which caused Plaintiff's realistic apprehension that Guillen would commit the acts threatened.

73. As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff respectfully requests entry of a judgment in her favor and against Jose Guillen in an amount to be proven at trial including actual damages, damages for emotional distress, punitive damages, plus attorney's fees and costs, and further relief as this Court deems equitable and just.

## COUNT IV – Negligent Infliction of Emotional Distress
### (Against Defendant Jose Guillen)

74. As and for its Paragraph 74, Plaintiff adopts and re-alleges paragraphs 1 through 73 as if fully restated herein.

75. As a state employee who has the authority to inspect Plaintiff's business, Guillen owes the Plaintiff a duty of care when he enters Plaintiff's facility to carry out his inspection duties vested by laws and by the IDA.

76. It is reasonable for Inspector Guillen to foresee that misusing his position of power for sexual benefits can cause Plaintiff severe emotional distress.

77. Inspector Guillen misused his position of power and breached the duty of care as a state employee by engaging in regular and ongoing sexually harassing conduct against Plaintiff.

78. Inspector Guillen's conduct has caused an injury to Plaintiff.

79. Inspector Guillen's extreme and outrageous barrage of harassment resulted in Plaintiff's reasonable emotional distress.

80. Plaintiff's injury was directly and proximately caused by Inspector Guillen's breach of duty of care.

WHEREFORE, Plaintiff respectfully requests entry of a judgment in her favor and against Defendant Jose Guillen in an amount to be proven at trial including actual damages, damages for emotional distress, punitive damages, plus attorney's fees and costs, and further relief as this Court deems equitable and just.

## COUNT V – Negligent Retention
### (Against Defendant the Illinois Department of Agriculture)

81. As and for its Paragraph 81, Plaintiff adopts and re-alleges paragraphs 1 through 80 as if fully restated herein.

82. At all times relevant to the complaint, Inspector Guillen has been an employee of Defendant IDA.

83. The IDA owes a duty of care to the individuals including Plaintiff in the State of Illinois.

84. The IDA knew or should have known Guillen's misconduct.

85. The IDA continues to employ Guillen and task him with inspecting Plaintiff's pet care business.

86. The IDA continues to provide Guillen with the authority to perform inspections that can potentially end Plaintiff's business.

87. The IDA continues to provide Guillen with the authority to perform inspections at Plaintiff's pet care store that requires Plaintiff to engage in sexual acts to pass the inspections.

88. The IDA fails to adequately train and supervise state employees on sexual harassment prevention.

89. The IDA fails to investigate Plaintiff's charges of sexually harassing behavior by Inspector Guillen.

90. As a direct and proximate result of the IDA's actions or lack thereof, Plaintiff suffered damages.

WHEREFORE, Plaintiff respectfully requests entry of a judgment in her favor and against the Illinois Department of Agriculture in an amount to be proven at trial including actual damages, damages for emotional distress, punitive damages, plus attorney's fees and costs, and further relief as this Court deems equitable and just.

May 30, 2021                                    Respectfully submitted,

__s/ Daniel Lynch_____
Daniel Lynch (#6202499)
Lynch Thompson LLP
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
312-346-1600/312-896-5883 (fax)
dlynch@lynchthompson.com
docketing@lynchthompson.com

William A. Cirignani, Esq.
Cirignani, Heller & Harman, LLP
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
312-346-1600/312-896-5883 (fax)
wac@chhlaw.com

*Attorneys for Plaintiff Leah Bindig*